CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 0 4 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL F. BOWEN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:07cv023 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security. | ) By: | Hon. Michael F. Urbanski |
| | ) | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Michael Bowen ("Bowen") brought this action pursuant to 42 U.S.C.

§ 1383(c)(3), incorporating 42 U.S.C. § 405(g), for review of the Commissioner of Social

Security's ("Commissioner") final decision denying his claim for disability insurance benefits

("DIB") under Title II of the Social Security Act ("Act"). By standing order dated February 13,

2006, this case was referred to the undersigned for Report and Recommendation, and is before

the Court on cross motions for summary judgment. On this appeal, Bowen argues that the

Commissioner erred by relying on the medical opinions of a state agency physician and an

independent medical expert, rather than those of Bowen's treating nurse practitioner and treating

doctor.

The undersigned finds that the Administrative Law Judge's ("ALJ") reliance on the

opinion of an independent medical expert present at the administrative hearing, along with the

opinions of state agency physicians, as well as information gleaned from the record as to

Bowen's treatment history and activities of daily living, is sufficient to meet the substantial

evidence standard.  Accordingly, it is recommended that the ALJ's decision be affirmed.[1]

## I.

The court may neither undertake a de novo review of the Commissioner's decision nor re-

weigh the evidence of record.  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992).  Judicial

review of disability cases is limited to determining whether substantial evidence supports the

Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions.

See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).  Evidence is substantial when,

considering the record as a whole, it might be deemed adequate to support a conclusion by a

reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient

to refuse a directed verdict in a jury trial.  Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood,

487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a

preponderance.  Perales, 402 U.S. at 401.  If the Commissioner's decision is supported by

substantial evidence, it must be affirmed.  42 U.S.C.  § 405(g); Perales, 402 U.S. at 401.

The Commissioner employs a five-step process to evaluate DIB claims.  20 C.F.R.

§ 404.1520; see also Heckler v. Campbell, 461 U.S. 458, 460-462 (1983).  The Commissioner

considers, in order, whether the claimant (1) is working; (2) has a severe impairment; (3) has an

impairment that meets or equals the requirements of a listed impairment; (4) can return to his or

her past relevant work; and (5) if not, whether he or she can perform other work.  Id.  If the

---

[1] An earlier Report and Recommendation, filed on December 5, 2007, was vacated by the District Court for consideration of a discrepancy in the facts and entry of a corrected Report and Recommendation.

Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functioning capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Bowen was born on August 22, 1951 (Administrative Record [hereinafter R.] at 127) and completed school through the eighth grade. (R. 135) Prior to his alleged onset of disability, he worked for approximately thirty years as a steel worker, a job which required him to lift and carry objects weighing up to eighty pounds and stand most of the day on hard concrete while wearing steel-toed shoes. (R. 131, 172) On December 14, 2004, Bowen protectively applied for DIB, alleging a disability onset date of November 10, 2004, due to diabetes with neuropathy and arthritis in his back. (R. 127, 130) Bowen's application was denied initially on February 25, 2004 (R. 32) and upon reconsideration (R. 37). Bowen then requested an administrative hearing. (R. 41) The issue on this appeal does not concern whether Bowen can return to his past heavy exertion work; he cannot. Rather, the issue concerns whether he retains the residual functional capacity ("RFC") to perform a range of light work.

An administrative hearing was held on December 16, 2006. During this hearing, the ALJ informed Bowen that his treating physician and agency physicians were of the opinion that his drinking may be responsible for some of his problems, and that if the ALJ found that alcohol was material in causing Bowen's disability, the Social Security regulations directed him to find that

3

Bowen is not disabled. (R. 275) With the approval of Bowen and his counsel, the ALJ continued the hearing for a later date so that a medical expert could review Bowen's medical records and testify as to whether alcohol was material in causing his impairments and whether Bowen has other impairments that alcohol would not affect. (R. 276)

A second administrative hearing was held on January 10, 2006, during which Dr. H.C. Alexander, III testified as an independent medical expert ("ME"). Dr. Alexander noted that Dr. Bashir Ahmad, Bowen's treating neurologist, thought that Bowen's alcohol abuse was a material cause of his neuropathy. He testified that he agreed with that conclusion on the basis that Bowen has very mild diabetes and that alcohol is toxic to the nerves and causes neuropathy. (R. 310) Dr. Alexander further testified that Bowen's impairments met no listings and that he has the RFC to stand without limitation; walk twenty minutes every sixty minutes, with sustained walking for a total of three hours out of an eight-hour day; occasionally balance, kneel, crouch, crawl, stoop, and bend; and never climb ropes, ladders, scaffolds, or operate machinery hazards. (R. 312-13) Based on this testimony, a vocational expert ("VE") testified that a person having Bowen's RFC could work within "a huge occupational base consisting of unskilled jobs at the light exertional level." (R. 319)

Following the administrative hearing, Bowen submitted additional medical evidence, which was received and reviewed by the Administrative Law Judge ("ALJ") and incorporated into the record. (R. 15) Largely relying on Dr. Alexander's opinion at the administrative hearing, the ALJ issued a written decision on February 23, 2006, denying Bowen's DIB claim. (R. 12-24) The Appeals Council declined further review of the case, (R. 5-8), and adopted the ALJ's decision, thus making the judgment the final decision of the Commissioner. Bowen now appeals.

4

Bowen disputes the ALJ's finding that he is not disabled and argues that the ALJ failed to meet his burden of establishing that jobs exist in the national economy that Bowen can perform. Specifically, he argues that the ALJ erred in failing to give proper weight to the opinions rendered by his treating FNP, Christina Stephenson, and treating neurologist, Dr. Vascik, that Bowen is incapable of maintaining substantial gainful employment.  (Pl's Br. 4-5)

The medical evidence of record indicates that beginning in October, 2004, Christina E. Stephenson, FNP, treated Bowen for his complaints of right hip and knee pain.  (R. 172) Stephenson noted that Bowen had pain upon palpitation of the sacroiliac joint on the right, that she was unable to elicit any patella reflexes, and that Bowen had a positive straight leg raise. (R. 172)  In light of these observations and Bowen's pain, Stephenson prescribed Ultracet and Skelaxin, and arranged for Bowen to undergo an MRI of the lumbar spine on October 20, 2004. (R. 172)

The MRI of Bowen's lumbar spine revealed moderate diffuse spondylosis throughout the lumbar spine[2] with multi-level disc narrowing and desiccation.  It also showed multi-level broad-based central and biforaminal disc bulging with mild central stenosis[3] at L2-3, mild central and inferior foraminal stenosis at L3-4, mild to moderate central and inferior foraminal stenosis at L4-5, and mild central stenosis at L5-S1.  (R. 163)

---

[2] Lumbar spondylosis is a degenerative joint disease affecting the lumbar vertebrae and intervertebral discs, causing pain and stiffness, sometimes with sciatic radiation due to nerve root pressure by associated protruding disks or osteophytes.  Dorland's Illustrated Medical Dictionary 1743 (30th ed. 2003).

[3] Spinal stenosis is a narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space.  Dorland's Illustrated Medical Dictionary 1758 (30th Ed. 2003).

5

FNP Stephenson referred Bowen to James Vascik, M.D., a neurosurgeon, to evaluate Bowen's hip pain. Dr. Vascik noted that Bowen appeared "bone-thin" during a consultation visit on November 11, 2004. (R. 159)  Upon examination, Dr. Vascik reported that Bowen could walk on heels and toes, could flex forward up to 45 degrees, extend up to 10 degrees, and straight leg raise up to 80 degrees without right hip pain. (R. 159)  Bowen was not particularly tender to closed fist percussion along the lumbosacral spine, had a very straight spine with no lumbar lordotic curve, had a negative Trendelenberg's test, and no pelvic tilt. (R. 159)  Dr. Vascik observed that Bowen's

> MRI scan shows some degenerative changes and some stenosis, but that's about it.  There is no pressure on his exiting nerve root.  The neural foraminal narrowing is real, but he still has more than adequate room for the nerve to exit.  He is not really complaining of radiculopathy, he is complaining of joint pain.

(R. 160)  In light of Bowen's pain, Dr. Vascik ordered physical therapy and an EMG of the right lower extremity, to look for diabetic neuropathy, and prescribed Valium instead of Skelaxin. (R. 160)  Also, during this visit, Bowen described how his job as a steel worker was taxing.  Dr. Vascik noted that Bowen's job was "a very manual-type job" in that he has to lift, bend, push, and carry. (R. 159)  Dr. Vascik concluded his visit notes by reporting that Bowen "has asked me to keep him out of work and I am happy to do so until we get to the bottom of this." (R. 160)  Dr. Vascik completed a Disability Certificate on November 11, 2004, recommending that Bowen not work until December 13, 2004, due to further testing and therapy. (R. 161)

On December 14, 2004, Dr. Vascik wrote a letter to FNP Stephenson indicating that he reviewed the results of an EMG and nerve conduction study done on Bowen by neurologist Dr. Ahmad on December 2, 2004, and stating "I don't believe this man can work anymore." (R. 156)  Believing Bowen's polyneuropathy to be consistent with his diabetes, Dr. Vascik recommended

6

tighter control over Bowen's diabetes to stabilize his neuropathy. (R. 156) As Bowen did not require surgery, Dr. Vascik recommended a formal consultation with the neurologist, Dr. Ahmad. Dr. Vascik completed a Disability Certificate on December 14, 2004, stating that Bowen "was seen in the office today and should not perform any type of work." (R. 158)

Dr. Ahmad examined Bowen on December 15, 2004 and noted that Bowen appeared "an ill kempt, thin middle aged white man who was slovenly dressed," and "smelled of cigarettes and marijuana." (R. 165) Dr. Ahmad also noted that Bowen "drinks 8-10 beers every night," and "smokes marijuana for his pain. His wife chimes in that she has to smoke pot because of her chronic low back pain and he shares the cigarettes with her." (R. 164) During this visit, Bowen walked with a normal gait, could walk on his toes and heels without difficulty, and had a normal tandem gait. (R. 165) Deep tendon reflexes were absent at the brachioradialis and biceps, and knee jerks and ankle jerks were likewise absent. (R. 165) Dr. Ahmad noted that upon reviewing the results of an electromyography/nerve conduction velocity ("EMG/NCV") study performed December 2, 2004, he found evidence of a very mild distal axonal sensory motor peripheral neuropathy in Bowen's legs, and found no evidence of a right lumbosacral radiculopathy. (R. 164) Dr. Ahmad concluded that Bowen had a slightly asymmetric sensory motor peripheral polyneuropathy[4] in the upper and lower extremities that is likely due to a combination of diabetes and alcoholism. He provided Bowen with samples of Neurontin for pain and recommended "tight control of diabetes mellitus and a more healthy lifestyle." (R. 165-66) Obviously, of

---

[4] Polyneuropathy is neuropathy of several peripheral nerves simultaneously. Neuropathy is a functional disturbance or pathological change in the peripheral nervous system. Dorland's Illustrated Medical Dictionary 1440, 1257 (30th ed. 2003).

7

significance here is the fact that Dr. Ahmad, Bowen's treating neurologist, said that Bowen's objective testing revealed very mild peripheral neuropathy.

On a return visit in March, 2005, Dr. Ahmad noted that Bowen's diabetes was under control with diet. Dr. Ahmad noted that Bowen's "diabetes has not been severe enough to require any medications. His pain in his lower extremities is worse in the early morning. He is having some trouble sleeping. He has been taking Neurontin, 300 mgs. t.i.d., and it is working adequately." (R. 227) Bowen's lower extremity strength was normal, and knee and ankle jerks were absent. (R. 227) Dr. Ahmad increased Bowen's Neurontin dosage at this visit, but does not appear to have seen Bowen again.

On October 21, 2005, after meeting with Bowen on three occasions, (R. 172-73, 193-94, 197-98), FNP Stephenson completed an assessment of Bowen's physical ability to do work-related activities. (R. 246-49) She opined that Bowen could lift twenty pounds occasionally and ten pounds frequently; could stand and walk for two hours in an eight-hour workday; had no limitation in sitting, pushing or pulling; could occasionally kneel, crouch, crawl, and stoop; and could never climb or balance. (R. 246-49) While this assessment does not support a finding of complete disability, she added that on average, Bowen would be absent from work more than three times per month. (R. 249)

Richard M. Surrusco, M.D., a state agency doctor, reviewed Bowen's medical evidence and completed a physical RFC Assessment on February 23, 2005 that is roughly commensurate with the one completed by FNP Stephenson. (R. 217-23) Dr. Surrusco determined that Bowen could lift twenty pounds occasionally and ten pounds frequently; stand about six hours in an

eight-hour workday; sit about six hours in an eight-hour work day;[5] could occasionally balance,

stoop, kneel, crouch, and crawl; and had no limitations in pushing or pulling. (R. 218-20)

Unlike FNP Stephenson, however, Dr. Surrusco made no estimate as to how many days of work

Bowen would miss each month, but concluded his evaluation as follows: "The claimant has a

substance abuse disorder in addition to his other medically determinable impairments. The other

impairments produce disabling limitations such that if he discontinues the substance abuse,

residual limitations from his other impairments will remain at a disabling level." (R. 223)

Frankly, this notation by Dr. Surrusco is confusing. Dr. Surrusco's assessment puts Bowen

squarely in the light work category. Given that, it is puzzling that Dr. Surrusco's note uses the

term "disabling level." In fact, given this comment, had the ALJ not gone the extra mile and

sought the opinion of an independent medical expert, Dr. Alexander, the confusion created by

Dr. Surrusco's comment may well have necessitated a remand for further clarification.

### III.

Based on the medical evidence of record, the ALJ determined that Bowen was not

disabled within the meaning of the Act. (R. 15) At step one of the disability evaluation process,

the ALJ found that Bowen had not engaged in substantial gainful activity since his alleged onset

date of disability. (R. 17) At step two, the ALJ found that Bowen's peripheral neuropathy,

diabetes mellitus, chronic alcohol abuse, history of hepatitis, and degenerative disc disease of the

lumbar spine were severe. (R. 18) At step three, the ALJ, relying on the medical evidence and

the testimony of Dr. Alexander at the administrative hearing, determined that Bowen's

---

[5] In contrast, FNP Stephenson stated that Bowen could stand and walk for two hours but
had no limitation in sitting. (R. 246)

impairments were not severe enough to meet the listing requirements in Appendix 1, Subpart P, 20 C.F.R. Pt. 303. (R. 18)

The ALJ considered Listings 1.04 (disorders of the spine); 5.05 (liver disease); 9.08 (diabetes mellitus), 11.14 (peripheral neuropathy), and 12.09 (substance abuse disorders), and found that the evidence did not meet any such Listing. When a claimant presents with a substance abuse disorder, Listing 12.09 instructs the ALJ to consider the body system affected by the claimant's alcohol use and that system's corresponding listing in order to determine whether the claimant is disabled. Appendix 1, Subpart P, 20 C.F.R. Pt. 303. In this case, alcohol use was believed by his doctors to cause peripheral neuropathy, so reference to Listing 11.14 is appropriate. The ALJ ultimately concluded that Bowen is able to ambulate effectively, a conclusion supported by the RFC Assessments completed by Bowen's treating FNP, the state agency physician, and the ME. As such, Bowen does not satisfy Listing 11.14, and in turn, therefore, Listing 12.09.

Before proceeding to step four, the ALJ found that Bowen maintained the RFC to perform a limited range of light work.[6] (R. 21) Specifically, the ALJ concluded that Bowen retained the RFC to lift and/or carry up to twenty pounds occasionally and ten pounds frequently; sit and stand without limitation; walk continuously for twenty minutes every hour, up to three hours total in an eight-hour day; occasionally climb steps and ramps, balance, kneel, crawl, crouch, and stoop; and never climb ladders, ropes or scaffolds, or work around hazards. (R. 21)

---

[6] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 416.967.

10

In making this assessment, the ALJ found Bowen's statements about his limitations not fully credible based upon the medical evidence, the testimony of the ME, and Bowen's own statements regarding his daily activities. (R. 20-21).

At step four of the analysis, the ALJ determined that Bowen would be unable to perform his past relevant work as a steel worker/fabricator, because that work was heavy in exertion. (R. 22) Finding that Bowen could not perform his past relevant work, the ALJ proceeded to determine whether Bowen could perform other jobs available in the national economy. In order to facilitate such a determination, the ALJ sought the testimony of John Newman, a VE. Newman testified that a hypothetical individual of Bowen's age, education, past relevant work experience, and RFC would be capable of making a vocational adjustment to other work. Specifically, such an individual could work as a cashier, assembler, and packer. (R. 23) The ALJ relied on the VE's testimony and found Bowen not disabled under the Act. (R. 23)

## IV.

Bowen argues that the ALJ failed to accord proper weight to the opinions of his treating nurse practitioner and neurosurgeon. The undersigned finds that substantial evidence supports the Commissioner's conclusion that Bowen did not satisfy the Act's entitlement conditions.

An ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. § 404.1527(d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory

11

diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. § 404.1527 (d)(2); Social Security Ruling 96-2p. The ALJ is to consider a number of factors which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527. A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. <u>Mastro</u>, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The undersigned finds that the ALJ considered and properly weighed FNP Stephenson's and Dr. Vascik's opinions that Bowen is incapable of maintaining substantial gainful employment. Before discussing each opinion, however, the undersigned notes that an opinion that an individual is disabled and therefore unable to work is not a medical opinion. Rather, it is an opinion on an issue reserved to the Commissioner because it is an administrative finding that is dispositive of the case. 20 C.F.R. § 404.1527(e).

The ALJ gave little weight to Dr. Vascik's opinion that Bowen is unable to work, concluding that his opinion was not supported by the medical findings. For the following

12

reasons, the undersigned finds that substantial evidence supports the ALJ's decision to afford little weight to Dr. Vascik's opinion. First, Dr. Vascik's own findings weigh against giving great weight to his opinion that Bowen is disabled. He reported that Bowen's MRI showed no nerve root compression. He attributed Bowen's peripheral neuropathy to diabetes, but did not recommend the use of medication to treat the diabetes; rather, he recommended treating Bowen's pain conservatively with physical therapy and medication and by stabilizing his diabetes with diet. Also, Dr. Vascik, a neurosurgeon, performed no surgical procedures on Bowen, nor did he recommend surgery.

Second, the records of Bowen's treatment by his neurologist, Dr. Ahmad, do not support Dr. Vascik's conclusion that Bowen cannot work. After meeting with Bowen, Dr. Ahmad described Bowen's neuropathy as "very mild" and found no evidence of radiculopathy. (R. 164) Upon examination, Dr. Ahmad noted that Bowen could walk with a normal gait, could walk on his toes and heels without difficulty, and that his dorsalis pedis pulses were normal. (R. 165) Dr. Ahmad noted that Bowen drinks "8 to 10 beers every night" and accordingly attributed his neuropathy to a combination of diabetes and alcoholism. His concluding recommendation was "tight control of diabetes mellitus and a more healthy lifestyle." (R. 166)

Finally, the undersigned notes that Dr. Vascik saw Bowen on only two occasions before determining on November 11, 2004 that he "should remain out of work . . . due to further therapy and testing." (R. 161) He did not justify this conclusion, and given the context of his visit with Bowen on November 11, 2004, it appears that Dr. Vascik could have been simply stating that Bowen could not return to the heavy manual labor he was performing. Indeed, Dr. Vascik's

13

office notes from that date describe the taxing nature of Bowen's job as a steel worker, and Bowen's request to "keep him out of work." (R. 159-60)

Dr. Vascik completed a second Disability Certificate on December 14, 2004. The Certificate states that Bowen "should not perform any type of work. He will be evaluated by Dr. Ahmad and will follow up with their office." (R. 158) In his office notes from this date, Dr. Vascik opined "I don't believe this man can work anymore," but again, he provided no justification for his conclusion.[7] Rather, he defers to Dr. Ahmad, whose findings, as discussed above, do not support a finding of disability. Accordingly, the undersigned finds that ALJ was justified under 20 C.F.R. § 404.1527 in giving little weight to Dr. Vascik's opinion that Bowen cannot work, because his conclusive opinion about the nature and severity of Bowen's impairments is not well supported by the medical evidence of record.

Bowen also argues that the ALJ erred in failing to give proper weight to FNP Stephenson's opinion that Bowen is no longer capable of maintaining substantial gainful employment because he will be absent from work more than three times a month. The problem with FNP Stephenson's opinion, however, is that she provides no explanation whatsoever for her estimate as to absenteeism.

Indeed, apart from the unexplained estimate of monthly absences, FNP Stephenson's RFC Assessment does not indicate that Bowen is disabled from all work. The RFC Assessments completed by FNP Stephenson and the state agency physician, Dr. Surrusco, are rather similar and suggest RFC levels consistent with the ability to perform light work. The RFCs differ in that

---

[7] There is some question as to whether Dr. Vascik means by his terse notes that Bowen cannot return to his heavy work in the steel mill or whether he is disabled from all work. Under these circumstances, it was appropriate for the ALJ to seek the opinion of medical expert, Dr. Alexander, at the administrative hearing.

14

while FNP Stephenson opined that Bowen could stand and/or walk for at least two hours in an eight-hour day and could never climb or balance, (R. 246-47), Dr. Surrusco stated that Bowen could stand and/or walk for about six hours in an eight-hour day and could occasionally climb and balance. (R. 218-19) FNP Stephenson places no restriction on Bowen's ability to sit and work, (R. 247), and Dr. Surrusco states that Bowen can sit about six hours in a workday. (R. 218) Dr. Alexander's RFC Assessment differed only slightly from those of FNP Stephenson and Dr. Surrusco. Dr. Alexander determined that Bowen could carry twenty-five pounds frequently and fifteen pounds occasionally; had no limitations sitting or standing; could walk twenty minutes each hour for a total of three hours out of an eight-hour day; could occasionally balance, kneel, crouch, crawl, stoop, and bend; and could not climb ropes, ladders, scaffolds, or operate machinery hazards. (R. 312-13) Dr. Alexander based this determination on the fact that while Bowen's medical examiners found problems with Bowen's ambulation, they found no motor weakness. Dr. Alexander's RFC Assessment is also corroborated by Bowen's own testimony that he is able to drive locally, prepare lunch, run errands, grocery shop, and entertain friends and family at his home weekly. (R. 291-95)

Finally, the undersigned notes that the ALJ properly considered Bowen's extensive history of alcohol abuse when considering the record as a whole. The record indicates that in 2003, FNP Stephenson noted that Bowen "has been drinking very heavily for at least 30 years, and his abnormal liver tests may all be due to this. . . . He did acknowledge that he is an alcoholic and it is difficult for him to quit." (R. 200) Dr. Alexander testified that he agreed with Dr. Ahmad that alcohol is material in causing Bowen's neuropathy. (R. 310) State agency physician, Dr. Surrusco, appeared to conclude otherwise in his RFC Assessment, in which he

15

acknowledged that Bowen "has a substance abuse disorder in addition to his other medically determinable impairments," but concluded that "[t]he other impairments produce disabling limitations such that if he discontinues the substance abuse, residual limitations from his other impairments will remain at a disabling level." (R. 223) The undersigned notes, however, that although Dr. Surrusco used the term "disabling" to describe Bowen's residual impairments, his RFC Assessment does not lend itself to a finding of total disability. Rather, it shows RFC levels consistent with the ability to perform a full range of light work.

This is a very close case on appeal. To be sure, the record contains evidence, principally the opinions of Dr. Vascik and FNP Stephenson, that the Commissioner could have embraced to find disability. On the other hand, each of these practitioners saw Bowen only a few times,[8] the testimony of Dr. Alexander, the medical expert at the administrative hearing, was very strong, and the medical records of Dr. Ahmad, the treating neurologist, do not suggest complete disability. It is not the province of the court to make a judgment of disability for itself, such as on a de novo appeal, nor is it allowed to reweigh the evidence. Rather, the question is whether there is substantial evidence in the record as a whole to support a conclusion by a reasonable mind. As the Supreme Court has said, substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a scintilla and somewhat less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971). Given the obligation imposed by this tight standard of review, the undersigned cannot recommend reversing or remanding this case. While there is evidence supporting each side of this case, the undersigned finds that the testimony of Dr. Alexander at the administrative hearing,

_____

[8] The record reflects that FNP Stephenson saw Bowen three times and Dr. Vascik saw him only twice.

16

the detailed physical examination and assessment of Dr. Ahmad, and the fairly consistent functional assessments of Dr. Alexander, state agency doctor Richard Surrusco, and FNP Stephenson amount to substantially more than a scintilla of evidence. While all agree that Bowen certainly cannot return to his former heavy labor job, consideration of all of the evidence in the record leads the undersigned to conclude that substantial evidence supports the Commissioner's determination that Bowen retains the residual functional capacity to perform a range of light work. Therefore, the undersigned recommends that the Commissioner's decision be affirmed.

<strong>V.</strong>

For the foregoing reasons, the undersigned concludes that the ALJ properly evaluated all of the medical opinions in this case, including those of the medical expert as well as Bowen's treating neurologist, neurosurgeon and nurse practitioner, accorded the proper weight to the evidence, and demonstrated that work exists in the local and national economies that Bowen is able to perform. Accordingly, the undersigned recommends that the plaintiff's motion for summary judgment be denied and the defendant's motion for summary judgment be granted.

In recommending that the final decision of the Commissioner be affirmed, the undersigned does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence.

The Clerk is directed to transmit the record in this case to the Hon. Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

ENTER: This 4th day of January, 2008.

Hon. Michael F. Urbanski
United States Magistrate Judge

Case 7:07-cv-00023-SGW-mfu   Document 18   Filed 01/04/08   Page 18 of 18   Pageid#: 90